IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REGINA H.,[1]           )
                        )
     Plaintiff,         )
                        )           CIVIL ACTION
v.                      )
                        )           No. 22-1192-JWL
KILOLO KIJAKAZI,        )
Acting Commissioner of Social Security,  )
                        )
     Defendant.         )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.      Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for SSDI and SSI benefits on January 30, 2017, and February 21, 2017, respectively. (R. 227-237). In proceedings before the Social Security Administration (SSA) Plaintiff amended her alleged onset date to June 24, 2015. Id. at 15. On October 13, 2018, ALJ Toth issued a decision finding Plaintiff was not disabled within the meaning of the Act and the regulations. Id. 15-27. Plaintiff appealed the decision to this court and on July 22, 2020, Judge Robinson issued a decision remanding the case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Id. 520. On remand, the Appeals Council vacated the ALJ's prior decision, noted Plaintiff had filed a subsequent application for SSI benefits on which the agency determined Plaintiff was disabled as of December 5, 2019, and remanded to the ALJ to offer Plaintiff "the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision for the period prior to December 5, 2019." (R. 500, 505).

On remand, ALJ Toth received additional evidence into the record, held a hearing, and issued a decision on July 28, 2021, finding Plaintiff was not disabled within the meaning of the Act and the regulations from the amended alleged onset date through the date of the decision.[2] Id. 437-54. Plaintiff filed this case seeking judicial review of the decision on remand pursuant to 42 U.S.C. § 405(g) on August 23, 2022. (Doc.1). Plaintiff filed this case within the 60 days provided for the Appeals Council to assume jurisdiction of the decision after remand. 20 C.F.R. §§ 404.984(c), 416.1484(c); see also, R. 435 ("If you do not file written exceptions and the Appeals Council does not review

---

[2] The court notes the decision found Plaintiff not disabled for SSDI benefits through the date of the decision but not disabled for SSI benefits through December 5, 2019. Id. 454.

2

my decision on its own, my decision will become final on the 61st day following the date of this notice."). Nonetheless, the Commissioner did not object or assume jurisdiction and the case has become ripe for decision. Plaintiff claims the ALJ erred in evaluating her allegations of symptoms resulting from her alleged flares of rheumatoid arthritis and as a result the residual functional capacity (RFC) assessment was also erroneous.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.     Discussion

Plaintiff acknowledges the ALJ's finding that her impairments including rheumatoid arthritis (RA) might reasonably be expected to cause the limitations alleged but that the limitations alleged are not entirely consistent with the record evidence. (Pl. Br. 12). She acknowledges the ALJ "evenhandedly summarized the treatment records," but alleges that "physical examination findings often showed abnormal findings such as a slowed gait, left leg limp, arthritic changes, and swelling, while other examination findings revealed no abnormalities in the same areas." Id. (citing R. 445-47). Plaintiff argues this difference in symptoms over time shows a waxing and waning of symptoms but "the ALJ failed to identify any inconsistencies between the evidence and" her allegations of symptoms during her RA flare-ups (when her symptoms were waxing). Id.

5

at 12-13.  She concludes, "Therefore, it is unclear how the ALJ weighed [her] allegations of symptoms during a flare-up."  Id. 13.

Plaintiff notes the ALJ asked Dr. Campbell to complete a medical assessment and opinion after evaluation of Plaintiff's medical records which were provided to the physician on February 25, 2021.  (Pl. Br. 13-14, see also, R. 760-88).  The ALJ then sent Dr. Campbell a copy of the examination of Dr. Ellsworth made on February 15, 2020 and asked her to update her opinion based on the medical records including that physical examination report.  Id., see also, R. 789-824.  Plaintiff argues Dr. Campbell's medical opinions provide probative evidence bolstering her allegations of symptoms which the ALJ ignored because Dr. Campbell explained "that while new evidence in February 2020 documented numerous abnormalities, [treatment] notes from October 2020 revealed no abnormalities in the same areas of observation," which she alleges support Plaintiff's "allegations of symptoms during rheumatoid arthritis flare-ups."  Id. (citing R. 784, 811).  She argues the ALJ "did not acknowledge Dr. Campbell's statements about the waxing and waning nature of [Plaintiff]'s symptoms."  Id. 14.

Plaintiff argues the finding on the subsequent application that Plaintiff met the criteria of a Listing and was not disabled until December 5, 2019 has no medical significance because December 5, 2019 was the date of that application and as such was the earliest date disability could be found.  Id. at 15.  She argues that the subsequent application and finding of disability is evidence further supporting her allegations of disabling symptoms.  Id.

6

Plaintiff points to two decisions of this court wherein the court found the ALJ provided an even-handed summary of the evidence but failed to identify the inconsistencies relied upon to discount the allegations at issue and argues the same rationale applies in this case.  (Pl. Br. 15-17) (citing Matthew S. v. Kijakazi, Civ. A. No. 20-1365-JWL, 2022 WL 1202399, at *4 (D. Kan. April 22, 2022); Stephanie Jean S. v. Kijakazi, Civ. A. No. 20-1349-JWL, 2022 WL 204244, at *4 (D. Kan. Jan. 24, 2022).  She argues that, here

> the ALJ never acknowledged that the very nature of rheumatoid arthritis is a waxing and waning of symptoms, which is what the ALJ's summary of evidence revealed.  She also never acknowledged Dr. Campbell's opinion that [Plaintiff]'s symptoms varied from day-to-day and it was impossible to give an overall RFC.  Instead, the ALJ failed to recognize that the evidence was consistent with allegations of rheumatoid arthritis flare-ups and, therefore, her allegations should have been afforded weight.

Id. at 17.  Plaintiff asks that the court "remand for the ALJ to explain how she weighed [Plaintiff]'s allegations of symptoms during a rheumatoid arthritis flare-up."  Id.

The Commissioner argues that the ALJ appropriately evaluated Plaintiff's allegations of symptoms.  She points out that contrary to Plaintiff's allegations the ALJ pointed to inconsistencies between the record evidence and Plaintiff's allegations of disabling symptoms.  (Comm'r Br. 12).  She argues, "The Tenth Circuit 'does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on' when evaluating a claimant's statements."  Id. at 13. (quoting Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009)).

She argues the ALJ considered and discussed both of Dr. Campbell's reports and that "Plaintiff's convoluted argument (that Dr. Campbell made a probative statement

7

about the waxing and waning nature that supported Plaintiff's allegations of disabling flare ups and that the ALJ rejected this probative evidence) is a thinly veiled attempt to have the Court improperly reweigh the evidence." (Comm'r Br. 14) (parentheses added). She points out that Dr. Campbell opined in February, 2021 that Plaintiff's condition does not meet or medically equal Listing 14.09 for rheumatoid arthritis and stated in her April, 2021 report that Dr. Ellsworth's report (Ex. 16F) from February, 2020 would not change her earlier opinion. Id. at 14-15 (citing R. 784,[3] 811). The Commissioner argues the ALJ specifically and adequately discussed Dr. Campbell's opinions and the decision shows how they fit in his evaluation of Plaintiff's allegations of symptoms.

Finally, the Commissioner tacitly acknowledges that Dr. Ellsworth's February 2020 opinion may support (bolster) Plaintiff's allegations of symptoms, but argues, "the ALJ discussed Dr. Ellsworth's opinion in detail and concluded it was not entitled to probative weight because his objective findings regarding hand use and decreased grip strength were not shown in the evidence during the relevant period (prior to the December 5, 2019 onset date)." Id. 16.

### A.   The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms

The ALJ stated she considered Plaintiff's allegations of symptoms in accordance with 20 C.F.R. §§ 404.1529, 416.929 and Soc. Sec. Ruling (SSR) 16-3p. (R. 444). She explained the evaluation involved a two-step process; at the first step determining

---

[3] While Dr. Campbell's report did discuss the evidence respecting Listing 14.09 as one of Plaintiff's impairments at R. 784, it was at R. 785 that she stated her opinion that Plaintiff's condition does not meet or medically equal Listing 14.09 and the reasons for that opinion.

whether Plaintiff has a medically determinable impairment that can reasonably be expected to produce the alleged symptoms and at the second step evaluating the extent to which the symptoms limit Plaintiff's work-related activities. She explained that if at the second step the symptoms are not substantiated by the objective medical evidence, she must consider the other record evidence to evaluate the limitations caused by Plaintiff's symptoms. (R. 444).

> The ALJ summarized Plaintiff's allegations of disabling physical symptoms:
>
> Through hearing testimony and disability reports, the claimant is alleging the inability to work fulltime due to a combination of physical and psychological impairments. She testified that she has rheumatoid arthritis flare-ups several times a week; her pain is constant but it is worse at times. Her groin area bothers her and makes it difficult to walk. When she has a flare, she cannot sit in a chair. She has trouble standing and takes breaks when doing the dishes. Her back hurts after standing for even a few minutes. She watches Netflix during the day, tries to do chores when she can and plays Solitaire on her phone; however, she spends 80 percent of her time in her bed.

Id. The ALJ found Plaintiff's allegations of symptoms not consistent with the medical evidence and other evidence of record. Id.

The ALJ found numerous inconsistencies in the evidence upon which she based her determination to discount Plaintiff's allegations of symptoms. The ALJ first found "the objective medical evidence does not support the claimant's allegations of disabling impairments." Id. at 445. She noted that on August 28, 2015 although examination showed a slowed gait, arthritic changes in her hands with swelling and nodules, Plaintiff described her symptoms as moderate. Id. She noted that at a consultative examination on May 17, 2017, Plaintiff "reported a limited ability to stand, walk and sit, as well as a

limited ability to use her right shoulder. She described '7' out of ten pain most days, despite the use of Plaquenil, Ibuprofen and Norco—but on examination Dr. Miller reported

> no acute distress and she did not require the use of an assistive device. Her gait was normal, including tandem walk and she had no limitations getting on or off the examination table. All extremity joints had a normal range of motion and there was no joint swelling or deformity. Her strength, deep tendon reflexes and sensation were also normal.

(R. 446). The ALJ noted that on a follow-up visit regarding chronic obstructive pulmonary disease on June 29, 2019 Plaintiff reported her symptoms were worse in the last year, "However, on examination, she demonstrated normal respiratory rate and pattern and she was in no distress. Her heart was regular in rate and rhythm with no murmur." Id. The ALJ found, "Overall, the claimant's complete treatment records do not document the limitations she subjectively alleges or otherwise establish functional limitations that would preclude the range of light exertion established in the residual functional capacity, above." Id.

The ALJ noted inconsistencies with Plaintiff's alleged limitations in the abilities to stand and walk:

> The medical evidence of record does not support that the claimant significant limited in her ability to stand or walk [sic]. Although the claimant testified that she spends the majority of her day in her bed or sitting down, she presented no evidence that she reported such limitations to her treatment providers. While her typical examination findings have shown a left sided limping and slow gait, she has not been prescribed any assistive device, and she has only described her rheumatoid symptoms as moderate to her primary care physician (Exhibits B2F/2, B3F/3, and B8F/5). During her May 2017 consultative evaluation, her reflexes were normal and 2+, and she was able to perform adequate dorsiflexion and plantarflexion. Romberg testing was normal, and there was no evidence of

> wrist or foot drops. As noted above, her gait here was normal (Exhibit B4F/2). She was later noted to have a slowed gait (Exhibit B11F/14, 16).
>
> Further, the claimant testified that she has difficulty lifting her arm, and records from Sumner County in August 2016 document complaints of right shoulder pain (Exhibit B3F/5). Dr. Miller confirmed a diagnosis of right shoulder bursitis during his May 2017 evaluation (Exhibit B4F/2). However, range of motion studies revealed full range of motion in the bilateral shoulders (Exhibit B4F/5). The claimant was negative for Bouchard nodes and Heberden nodes and Tinel and Phalen's testing was also negative bilaterally (Exhibit B4F/2). Although the claimant was observed to have 4/5 grip strength, Dr. Miller also observed that the claimant had no more than mild difficulty with any fine or gross manipulative maneuvers (Exhibit B4F/4).

(R. 447).

In addressing the medical opinions, the ALJ also noted some inconsistencies between record evidence and Plaintiff's allegations. She noted, "the evidence during the period under consideration does not show deficits in the ability to use the right wrist, hands and fingers to warrant greater restrictions despite the notations of arthritic changes in the hands with swelling (Exhibits B2F, B3F, B8F, B11F)." Id. 448. The ALJ noted that on Dr. Ellsworth's examination on February 15, 2020 Plaintiff "had significant involvement of the hands with synovium across the MCPs and PIPs, she had difficulty making fists and grip was diminished more on the left than the right. She … had difficulty buttoning buttons. There did appear to be active inflammatory change in the hands and across the MCPs. … [S]he could not make a full fist and grip was 3/5 on the right and 2/5 on the left. … Her gait was small stepped and a cane was used for pain management. (Exhibits B16A, B16F)." She found this evidence had no probative weight here because "the objective findings pertaining to use of the hands and decreased grip

11

strength supporting the opinion were not shown in the evidence, as was discussed above, prior to December 5, 2019.  Moreover, as was discussed above, there is no medical opinion of record finding that the current criteria of Listing 14.09 are met or equaled nor did the evidence prior to December 5, 2019 support that the criteria were met."  (R. 449).

### B. Analysis

Plaintiff acknowledges that the ALJ provided an evenhanded summary of the record but argues that the ALJ "failed to identify any inconsistencies between the evidence and [Plaintiff]'s testimony about the symptoms of her rheumatoid arthritis flare-ups."  (Pl. Br. 12).  As the above summary of the ALJ's findings regarding Plaintiff's allegations of symptoms makes clear, the ALJ pointed to many inconsistencies between Plaintiff's allegations of disabling symptoms and the record evidence upon which she relied to discount Plaintiff's allegations.  In the face of this evidence the court cannot understand Plaintiff to argue the ALJ did not point to evidence upon which she relied to discount Plaintiff's allegations at all, but rather that the ALJ pointed to evidence upon which she relied to discount Plaintiff's allegations of background symptoms when she did not experience flare-ups (waning rheumatoid arthritis symptoms) but did not point to evidence upon which she relied to discount Plaintiff's allegations of symptoms when she was experiencing flare-ups (waxing rheumatoid arthritis symptoms).

The ALJ's decision does support Plaintiff's argument.  The ALJ summarized Plaintiff's allegations, specifically noting that Plaintiff alleged "rheumatoid arthritis flare-ups several times a week, … her pain is constant but it is worse at times."  (R. 444).  "When she has a flare, she cannot sit in a chair. …Her back hurts after even standing for

a few minutes," and "she spends 80 percent of her time in her bed." Id. The ALJ specifically addressed herself to Plaintiff's "allegations of disabling impairments," noting that because they were not supported by the medical evidence it was "necessary to consider the evaluation factors from Ruling SSR 16-3p along with the record as a whole in order to determine whether the claimant is as limited as she has alleged." (R. 445).

Moreover, contrary to Plaintiff's arguments, Dr. Campbell's opinions do not provide support for Plaintiff's arguments. As Plaintiff recognizes and the ALJ noted, Dr. Campbell opined regarding environmental limitations but did not opine regarding limitations in lifting/carrying, sitting/standing/walking, manipulation, postural limitations, or using foot controls. (R. 777-82). Where she opined, the ALJ accorded her opinions partial weight and included them in the RFC assessed except for the limitation from dust, odors, fumes, or pulmonary irritants. Id. at 449. Plaintiff, however, argues that Dr. Campbell's report supports Plaintiff's allegations of symptoms because Dr. Campbell explained that Plaintiff's condition changes over time and "while new evidence in February 2020 documented numerous abnormalities, notes from October 2020 revealed no abnormalities in the same areas of observation." (Pl. Br. 14).

What Plaintiff misses in her argument is that Dr. Campbell opined in her February 2021 interrogatory that Plaintiff's condition did not meet or medically equal Listing 14.09 from June 24, 2015 through December 5, 2019. (R. 785). Then, on April 18, 2021, after reviewing Dr. Ellsworth's examination report dated February 15, 2020 based upon which the agency found Plaintiff disabled beginning December, 5, 2019, Dr. Campbell recognized it "documents that there is decreased grip strength in both hands and 'synovial

13

swelling noted across with MCPs and PIPs' without reference to which hand," and noted that in an October 2020 visit with a rheumatologist it was noted that "there is synovitis in the right hand only with normal examination of the left hand –'no tenderness, swelling, effusion or limitation to range of motion.'"  (R. 811).  Dr. Campbell recognized she was to opine on Plaintiff's condition before December 5, 2019 and concluded, "In considering all of the evidence available 2015-2019, there would be no change to my interrogatory after having reviewed once more that interrogatory, my notes summarizing evidence available at the time of that interrogatory and new evidence consisting of one exam in exhibit 16f [(Dr. Ellsworth's report)] in 2/2020.  Although the record does not reveal that Dr. Campbell was told Plaintiff had been found disabled beginning on December 5, 2019 based in part on Dr. Ellsworth's examination report (and undoubtedly she was not), she recognized her opinion was to relate to Plaintiff's condition before December 5, 2019 and found the synovitis present in February and October of 2020 did not suggest that Plaintiff's condition met or medically equaled Listing 14.09 during the applicable period before December 5, 2019.

In April 2021, Dr. Campbell recognized "[t]he evidence supports that the claimant's condition changes over time." Id.  In her February 2021 interrogatory, Dr. Campbell did not have Dr. Ellsworth's report to review, but she did review the rheumatology record of the October 2020 visit. Id. at 478.  In that interrogatory, Dr. Campbell noted that for the period at issue, June 24, 2015 through December 5, 2019,

> the records contain no xray , laboratory (anti-CCP antibody, sed rate, crp, rheumatoid factor) evidence to support rheumatoid arthritis/active disease; The exam findings of primary care provider, the sole provider in the

> longitudinal record for rheumatoid arthritis in the period above conflict with those of consultative examiner and longitudinal exam findings of primary care provider are sparse, do not describe all joints and the spine in detail, and do not describe findings to account for all of the claimant's issues which include pain in hands, shoulders, feet, ankle, back, and difficulty with range of motion bilateral shoulders, and loss of use of right upper extremity.

(R. 784) (citations omitted) (grammar, spelling, and punctuation verbatim).  Dr. Campbell recognized that the

> notes of primary care conflict with consultative exam 5/2017 where claimant's gait is noted to be normal and there is no swelling, heat, or erythema of joints, no nodes, no deformity and full range of motion of joints except minimal decrease in ankle dorsiflexion bilaterally; later notes of rheumatologist finds synovitis in right hand and wrist with 4 tender and 4 swollen joints confined to the right wrist and hand with good range of motion and no deformity of the shoulders, elbows, left hand, hips, knees, feet and ankles in 10/2020; xrays of the hands in 10/2020 documents osteoarthritic change without soft tissue swelling and diffuse osteopenia, and possible erosion (possible early erosive change from RA) of the PlP3; some but not all conflicts may be explained by the waxing and waning nature of inflammatory arthritis.  Overall, the objective exam findings are inadequate to opine regarding limitations during the period above.

Id. (citations omitted) (grammar, spelling, and punctuation verbatim).

Dr. Campbell's reports recognize that October 2020 rheumatologist's notes may reveal some specific permanent deleterious effects of rheumatoid arthritis and she recognized that the treatment notes and examination reports provided conflicting evidence—some of which could be explained by the waxing and waning nature of inflammatory arthritis.  These reports recognize an issue, but do not resolve it.  Therefore, while it is correct that the issue must be resolved by the ALJ in her decision, it is erroneous to say that Dr. Campbell's reports support Plaintiff's allegations of disabling symptoms.  In fact, Dr. Campbell's firm and repeated opinion that Plaintiff's condition

15

does not meet or medically equal the severity of Listing 14.09 is a substantial factor cutting against Plaintiff's allegations.

In discounting Plaintiff's allegations of disabling symptoms, the ALJ resolved, in part, the issue highlighted. And the reasons given by the ALJ to discount Plaintiff's allegations are supported by the record evidence. Moreover, in weighing the medical opinions, the ALJ explained how she resolved the conflicts between the various medical providers reports and opinions. She noted she had only given "some weight" to the opinions of the state agency physicians, noting, "the evidence during the period under consideration does not show deficits in the ability to use the right wrist, hands and fingers to warrant greater restrictions despite the notations of arthritic changes in the hands with swelling," and that Dr. Miller found Plaintiff had no more than mild difficulties using the upper extremities. (R. 448). She explained how she evaluated Dr. Miller's report, noted that Dr. Miller found Plaintiff "is unable to sustain work-related functions due to her rheumatoid arthritis and mental health issues" but provided "no specific functional limitations regarding the restrictions that might be imposed by the claimant's rheumatoid arthritis." Id. She noted that Dr. Miler's finding of disability is an issue reserved to the Commissioner. Id.

The ALJ discussed Dr. Ellsworth's examination report from February 15, 2020 noting Plaintiff "had significant involvement of the hands with synovium across the MCPs and PIPs, she had difficulty making fists and grip was diminished more on the left than the right," and there appeared "to be active inflammatory change in the hands and across the MCPs." Id. at 449. She noted that the state agency physician made a

determination in March 2020, based upon Dr. Ellsworth's examination report, that Plaintiff's condition met the criteria of Listing 14.09, but she explained that determination was given no weight because "the objective findings pertaining to use of the hands and decreased grip strength supporting the opinion [of the state agency physician, and by extension, Dr. Ellsworth] were not shown in the evidence, as was discussed above, prior to December 5, 2019. Moreover, as was discussed above, there is no medical opinion of record finding that the criteria of Listing 14.09 are met nor did the evidence prior to December 5, 2019 support that the criteria were met."  (R. 449).

The ALJ also extensively evaluated the opinions of Plaintiff's primary care physician, Dr. Jarmer and explained why she accorded those opinions only partial weight. Id. 450-51.  She explained Dr. Jarmer's opinion that Plaintiff

> could only sit for 15 minutes and stand for 10 minutes at one time; [would] require unscheduled breaks; be off-task; and miss work.  This portion of her opinion is not supported by or consistent with the medical evidence of record where the claimant reported moderate symptoms of rheumatoid arthritis affecting all joints and a slow or limping gait, but other records documented a normal gait without evidence showing decreased strength, instability, and/or inability to bear weight with the lower extremities

Id. 450.  The ALJ noted that although on September 4, 2019, Plaintiff was noted by Dr. Jarmer to have "inflammation in both hands, decreased range of motion in the right wrist and elbow, and arthritic changes in the knees with a slowed gait.  She was not noted to use an assistive device and she had normal reflexes in the lower extremities, a normal gait, could get on/off the examining table, and she did not have Bouchard/Heberden nodes." Id. (emphases added, citations omitted).  The ALJ explained:

17

> While there is a long-term treatment relationship, the medical records also do not support the opinions as to sitting, standing, shifting positions, breaks, need for a cane, off task and absences. The residual functional capacity does include limitations on postural and manipulative activities based on the right upper extremity issues and reports of stiffness and pain which are consistent with her rheumatoid arthritis. The need for an assistive device is not supported by her records or other evidence as was discussed above. Further, a need for frequent breaks is not supported by objective findings consistent with weakness, numbness or paresthesias. During the period in question, objective findings showed loss of strength that was at most 4 out of 5.

(R. 450-51).

Plaintiff simply has not met her burden to show that the ALJ did not properly consider and explain her evaluation of Plaintiff's allegations of disabling symptoms or to show that she did not properly consider the waxing and waning nature of inflammatory arthritis.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 27, 2023, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
